HITE & WIFE, Plaintiffs in Error, *vs.* THOMPSON *et al.*, Defendants in Error.

1. Under the act of 1825, concerning partition, no notice by publication to non-resident minor defendants was necessary, where the court appointed a guardian *ad litem*, who appeared and answered the plaintiff's petition.
2. Under that act, the guardian *ad litem* had power to consent to a private, instead of a public sale.

*Error to Marion Circuit Court.*

This was an action in the nature of ejectment, brought by James J. Hite and Harriet Jane, his wife, to recover the undivided half of a lot in the town of Palmyra. The plaintiffs claim title under Harrison Marders, who died in 1833, holding the lot as tenant in common with Abijah C. Abernathy. The plaintiff, Harriet Jane, was the daughter, and, at the time this suit was brought, sole surviving heir of Marders.

The defendants claimed title under a partition sale made in 1834, under the act of 1825, in a proceeding begun by Abijah C. Abernathy against the plaintiff, Harriet Jane (then Marders) and her brother, James A. Marders.

At the trial, the defendants offered in evidence the record of the proceedings in the partition suit, to the admission of which, the plaintiffs excepted. The record showed the following proceedings : A petition was filed by Abernathy, December 30, 1833, praying for the appointment of commissioners to make partition. The petitioner stated that he was the legal guardian of Harriet Jane and James A. Marders, who were minors, but being interested, he prayed the court to appoint a guardian

30—VOL. XVIII.

*ad litem* to represent them as to the matters in the petition. On the 19th of February, 1834, the court made an order appointing a guardian *ad litem* for the defendants. On the 26th of February, the guardian *ad litem* filed his answer confessing the petition. On the same day, the court made an order appointing commissioners to make partition. On the 20th of June, the commissioners reported that the lot could not be divided, and the court thereupon ordered that the same be sold, " by consent of parties, at private sale, for a sum not less than three hundred dollars." On the 22d of October, 1834, the commissioners reported that they had sold the lot to Henry Wilcox for $350, and the court thereupon confirmed the sale. On the 23d of June, 1834, the commissioners executed a deed to Wilcox.

The defendants showed a regular title from Wilcox. It did not appear that Harriet J. and James A. Marders had any notice of the proceedings in partition. It was admitted that they removed from Missouri in October, 1833, and took up their residence in Kentucky, where James A. shortly afterwards died without issue.

Upon the refusal of the court to instruct the jury that the proceedings in partition did not divest the title of the heir, the plaintiffs submitted to a non-suit.

*Lamb* and *Dryden*, for plaintiffs in error. By the act of 1825, notice to non-resident defendants, either by publication or by personal service, was necessary. R. C. 1825, tit. Partition, sec. 1. Notice was necessary to give the court jurisdiction, (11 Wend. Rep. 647. 4 Monroe, 545,) and must be shown by the record. *Peake* v. *Redd*, 14 Mo. Rep. 83. There being no notice, the partition sale was a nullity, and is to be so regarded, even in a collateral proceeding. 2. The act of 1825, authorizing the sale of land in partition, is in derogation of the common law, and must be construed strictly. On this principle, the sale could only take place in the manner pointed out by the act, and a *private sale* did not divest the title of the heir. 20 Wend. Rep. 249. 3. The deed from the

commissioners to Wilcox was void, because executed before the report and confirmation of the sale and before there was any order to convey. The fourth section of the act makes the report, the confirmation and the order of conveyance, all conditions precedent to the execution of the deed. These acts are all necessary to the validity of the deed. The deed being *void* when executed, no subsequent confirmation of the sale could make it valid.

*Pratt & Redd*, for defendants in error. Partition is a proceeding *in rem*. The court had jurisdiction of the subject matter, and its judgment and proceedings cannot be questioned in a collateral proceeding. 6 Peters, 729–30. 1 Peters, 340. 2 Peters, 169. 11 Mass. Rep. 226–7. 11 Serg. & Raw. 427–8. 2. The court had jurisdiction of the parties. The manner of acquiring jurisdiction, under the act of 1825, is by publication or the service of notice on a minor defendant (whether resident or *non-resident*) or on *his guardian.* Section 1. The court had power to appoint a guardian for the purposes of partition. Sec. 7. The acts of the guardian are as binding on the ward as if done by himself after arriving at full age. Sec. 7. Among the acts which the guardian may do, is the appearing and answering for the ward, which confers jurisdiction as fully as the service of notice could do. In this case, the general guardian was before the court, and out of abundant caution, a guardian *ad litem* was appointed, who appeared and answered. 3. However erroneous the proceedings may have been, the error can only be taken advantage of in a direct proceeding.

RYLAND, Judge, delivered the opinion of the court.

1. The only questions worthy of consideration in this case, arise upon the evidence offered by the defendants in the court below, that is, the record of the proceedings on the petition for partition, brought by Abernathy against the heirs of Marders. In the opinion of this court, the record of those proceedings

was properly admitted, and the sale ordered by the court on that petition for partition is conclusive upon the parties thereto. Under the statute of this state concerning partition, (R. C. 1825, the law governing the proceedings in this case,) the Circuit Court, for any of the purposes of said partition, had the power and authority to appoint a guardian for any minor, whether such minor was living in or out of this state, and that, too, either before or after the commencement of any proceeding by virtue of said act concerning partition. Such guardian thus appointed by the Circuit Court, in such proceeding, had the same power as any general guardian. This same statute of partition declares, " That the guardians of all minors and persons of unsound mind, appointed according to law, shall be and are hereby authorized, on behalf of their respective wards, to do and perform any matter or thing respecting the division of any lands, tenements or hereditaments, as herein directed, which shall be binding on such ward, and deemed as valid to every purpose, as if the same had been done by such ward after his disabilities are removed." Notwithstanding the first section of the said act states, " That if any of the parties to be notified shall reside out of this state, or cannot be found therein, the notice describing the lands, &c., shall be published for the space of two months, in one of the public newspapers printed in this state, which shall be deemed sufficient notice, &c., we think the power given to the courts to appoint a guardian for any minor, either residing within or without this state, either before or after the commencement of any proceeding under the partition act, when exercised by the courts so appointing such guardian, does away with the necessity of any publication of the notice. The statute expressly authorizes the courts to appoint the guardian before the commencement of any proceeding to obtain partition as well as to appoint after such commencement.

In the proceedings on the petition for partition in this case, the court appointed the guardian for the minor heirs of Marders after the commencement. The petitioner, Abernathy, was

himself the general guardian of these heirs, but for more cau- tion, the Circuit Court appointed another person guardian, who appeared and answered the petition. Thus the parties were, under the law concerning " partition," properly in court, and the proceedings were afterwards carried on by them.

2. It appears that by consent of the parties ( and the guardian by law had a full right and power to do anything that his ward could have done, had all disability been removed) the sale of the land in question was directed to be at private and not public vendue; it was to be for not less than such a sum, the supposed value of the land. The commissioners sold at private sale for an amount exceeding the sum specified in the order; a third person purchased—the deed was made by the commission- ers, and the report of the proceedings of the commissioners ap- proved. The statute did not require the infant defendants to be served with notice, either by publication or by personal service, before the Circuit Court had authority to appoint a guardian. This proceeding is under the statute of partition; it is purely statutory, and when the record shows a general compliance substantially with the provisions of the statute, it is binding and conclusive between the parties thereto.

The various defects pointed out by the plaintiffs to the record of the proceedings in partition, are of no weight or force. This court will not critically and minutely investigate the pro- ceedings of the courts ordering the sales of real estate, where they have general jurisdiction of such matters, in order to set aside such sales and declare them void. Courts are inclined to uphold judicial sales, and it is very well that such is their ten- dency; a contrary course would be ruinous in its consequences. No person could feel safe in purchasing real property, and a sacrifice of it would follow, fatal in its effects alike both to cred- itor and debtor. In the view, then, that this court has taken of the law governing the proceedings under the partition act of 1825, there is no error in the judgment of the lower court. The judgment is accordingly affirmed, Judge Scott concurring; Judge Gamble not sitting.