PHILIP and JOHN SHAW, by their Guardian, Respondents, *v.*
CHARLES GREGOIRE, Appellant:

| 41 | 407 |
|----|-----|
| 97 | 642 |
| 41 | 407 |
| 108 | 178 |
| 41 | 407 |
| 110 | 582 |
| 41 | 407 |
| 114 | 639 |
| 41 | 407 |
| 139 | 235 |
| 140 | 650 |
| 41 | 407 |
| 154 | 34 |

1. *Partition—Tenants in Common—Ejectment—Practice—Action.*—One tenant in common cannot sustain a suit in partition if his co-tenant has disseized him and holds the possession adversely ; the title of the plaintiff must first be established in an action of ejectment.
2. *Partition—Practice—Guardian ad litem—Infants—Process — Judgment.*— Until an infant be brought into court by proper service of process upon himself or his guardian, a court has no authority to appoint a guardian *ad litem* under the Partition Act of 1845—R. C. 1845, p. 765. A judgment of partition entered against infant defendants upon the appearance of a guardian *ad litem* appointed by the court without any service of process, is void. —Hite v. Thompson, 18 Mo. 461, commented upon and explained.

### *Appeal from St. François Circuit Court.*

This case was before the court in 35 Mo. 342. After the remanding of the case, the pleadings were amended by both parties. This suit was commenced November 7, 1855. The amended petition recited the proceedings in the suit of Gregoire v. Shaw et als., commenced January 12, 1852, for a partition, &c., and alleged that in said suit no process was served on these, then, defendants, who were minors, living in this State, in Scott county ; that a guardian *ad litem* was appointed by the court at the return term, May, 1852, who entered his appearance but filed no answer ; that judgment of partition was rendered and order of sale made at the return term, and prayed that as against the present plaintiffs the partition might be set aside and a new partition made. At the trial it was agreed that Philip and John Shaw were residents of this State, living in Scott county with their father. The original record of the partition suit of 1852, of Charles Gregoire v. Philip and John Shaw, the unknown heirs of Joseph Butcher and Joseph Buckholtz et als., defendants, was presented in evidence.

The petition in the original case contained two counts. The first count was for partition of 1200 arpens of land, setting out the shares of the different parties, alleging that Philip and John Shaw were minors, and praying that a

guardian *ad litem* be appointed. The second count was for an account for contribution by defendants for money paid by plaintiff Gregoire in and about the common property, and praying that the defendants be required to pay their share or that the sum paid by Gregoire be deducted from the proceeds of sale if the land should be sold. The record showed that a præcipe was given directing an order of publication in the "Ste. Genevieve Plaindealer," and that an order was issued and published as against all of the defendants but P. and J. Shaw; that W. E. Brady was by the court appointed as guardian *ad litem* for the infants; that he entered an appearance, and that judgment and order of sale was entered at return term. The court found that the appointment of Brady as guardian *ad litem* having been made without service of process upon the infants, gave no jurisdiction to the court, and that the original judgment was void as to the infants.

*T. T. Gantt*, for appellant.

Upon the record the following points are formally made for a reversal:

I. It was decided in 35 Mo. 342, that the judgment in the partition suit in 1852 was regular, valid, and binding. This was decided on the authority of the case of Hite v. Thompson, 18 Mo. 461, which was governed by a statute in all respects like that of 1845—§§ 53 & 54, p. 774, R. C. 1845.

II. There is not in the present record anything calling for or justifying a different rule of law from that pronounced by the Supreme Court in this cause in 1864. The question of value, that of the making of a motion to set aside the proceedings, and the failure of the minors to take their money from their guardian, are all beside the matter.

III. The record is otherwise full of error as to the plaintiffs. The petition is defective—§ 1, pp. 765–6, R. C. 1845. The finding is defective, for it fails to dispose of a material issue (26 Mo. 471; 1 Co. Litt. 696); and if the proceedings of 1852 were a nullity, there are no proper parties to the present action.

Shaw et al. by Guard. v. Gregoire.

*Whittelsey* with *J. B. Robinson*, for respondents.

I. The original suit was commenced in 1852; the practice therefore was controlled by the Acts of 1845, 1847, 1849 (R. C. 1845, p. 765; Practice Act in Chancery, R. C. 1845, p. 835, and Acts of 1847, p. 106), and Practice Act of 1849.

The Acts of 1847, p. 106, allowed suits in partition simply to be commenced by serving a copy and a notice as prescribed in the partition act of 1845, p. 706, or by suit in the ordinary form. The act of February 16, 1847 (Acts 1847, p. 106), left courts of equity their jurisdiction in partition cases.

As the second count in the petition in the case of Gregoire v. Shaw was for an account between tenants in common in the same suit with the partition, a matter of which only courts of equity could take cognizance, and as the practice at law and in chancery were combined by the act of 1849, it is evident that the suit was not for a partition at law under the statute, but for a partition and account together in equity. As to the jurisdiction of courts of equity, see notes to Agar v. Fairfax, 2 Wh. & Tud. L. C. Eq., P. 1, t. p. 503, Am. ed. 1852; Spitts v. Wells, 18 Mo. 468.

II. No process having been served upon the infants, they were not parties to the suit; the court had no jurisdiction to appoint a guardian *ad litem* for them, and the judgment as to them was wholly void—Hendricks v. McLean, 18 Mo. 32. The Practice Act of 1849 makes no provision for suits by and against infants; the practice was therefore left as prescribed by the former statutes. A judgment rendered without proper process is void—Bascom v. Young, 7 Mo. 1; Smith v. Ross, 7 Mo. 463; Anderson v. Brown, 9 Mo. 486; Boonville v. Ormond, 26 Mo. 193; Caldwell v. Lockridge, 9 Mo. 362; Janney v. Spedden et al., 38 Mo. 395; Smith v. McCutchen, Garn., 38 Mo. 415.

III. Until Brady gave bond as guardian, he was not qualified and had no authority to enter appearance—R. C. 1845, p. 774, §§ 53 & 54.

IV. The suit of Gregoire v. Shaw being at equity and not

simply at law, under the Practice Act of 1845 the case of Hite v. Thompson, 18 Mo. 461, does not apply to the case as made by the record.

V. The five years allowed for setting aside the judgment had not expired at the commencement of this suit—R. C. 1845, p. 831, § 8.

HOLMES, Judge, delivered the opinion of the court.

There is some irregularity in the proceedings, but the merits of the case depend upon the validity of the former judgment in partition as against the plaintiffs.

The petition and amendment may be taken as sufficient to sustain the judgment if otherwise correct. The answer denied the tenancy in common, and alleged that the defendant was holding the premises adversely to the plaintiffs. If this defence had been established, it would have put an end to all right to a partition in this suit, and it would have been necessary for the plaintiffs first to establish their title and right to the possession as tenants in common with the defendant by an action of ejectment. This was decided in the case of Lambert v. Blumenthal, 26 Mo. 471. In Forder v. Davis, 38 Mo. 107, the same principles were recognized, and it was held that a disseizin, or an adverse possession amounting to an actual ouster of the co-tenants, destroys the unity of possession and takes away the right of partition; but the possession of one tenant in common would presumptively, and without proof of such actual ouster, be the possession of the co-tenants also. The truth of this defence as a matter of fact was involved in the issues which were tried. The court found, in effect, that there had been no such disseizin or actual ouster, nor any such actual adverse possession of the land by the defendant. We do not find that any evidence was offered to prove the fact of such actual adverse possession. The whole matter appears to have been determined as a question of legal seizin by title, and as a matter of law. We must take it that the issue was found against the defendant.

The main question depends upon the validity of the adverse

title which the defendant endeavored to establish. For the purpose of showing such title in himself to the whole premises, he offered in evidence the record of a former partition suit between Charles Gregoire, plaintiff, and Philip and John Shaw, Joseph Buckholtz, and others, defendants, in the Circuit Court of St. François county. It appeared by this record that the suit was commenced by filing a petition for a partition in vacation on the 12th day of January, 1852, returnable to the next May term of the court; that no summons was issued, but that an order of publication was obtained upon an affidavit filed with the petition on the same day, notifying certain named defendants as non-residents, and other parties unknown, of the institution of the suit. Philip and John Shaw, who were alleged in the petition to be minors, and for whom it was prayed therein that a guardian *ad litem* might be appointed, were not named in this order of publication. The record did not show that a copy of the petition, accompanied with notice of the proceeding and of the day in term on which the petition would be presented to the court, had ever been served upon them, or upon any legally appointed or natural guardian, nor that a summons or notice of any kind had ever been served upon them. It appeared from the evidence that they were at that time residing with their father in the adjoining county of Scott. It further appeared by the record that when the proof of publication of the order was made, and a default taken against the parties who had been notified, the court proceeded of its own motion, or upon the prayer of the petition only, to appoint one William E. Brady guardian *ad litem* for these minors, and he accepted and gave bond as such. He filed no plea or answer for them, but submitted their interests to the determination of the court; and thereupon the court ascertained and declared the interests of the parties, and gave judgment that partition be made accordingly. We pass over such defects in the proceedings as might have been matters of error for which the judgment would be reversed on appeal.

It is evident that the suit was not instituted in conformity with any statute then in force. The order of publication would seem to have been obtained under the seventh section of the Partition Act of 1845. It could not have been done under the Practice Act of 1849 (art. 5, §§ 8 & 11), for the reason that there was no allegation in the petition that unknown parties were interested; nor under the act of 1847 (Laws of 1847, p. 106), for the reason that there was no summons or other proceedings in accordance therewith. This act had provided that suits in partition might be instituted in the manner then prescribed by law for ordinary suits in courts of record. Neither the Practice Act of 1845 nor that of 1849 can govern the case. It was not instituted in conformity with the provisions of either of them. There were, then, two modes of instituting a suit in partition, one under the act of 1847, and the other under the Partition Act of 1845. These two modes of proceeding are explained in Smith v. Davis, 27 Mo. 298. It must be taken, therefore, that the intention was to proceed under the law of 1845, if any. But it is plain that the proceedings were not conducted in conformity with the provisions of that act. It contemplated no summons, but the mode of instituting the suit was definitely prescribed by the fifth section of the act, which required that a copy of the petition with notice that the same would be presented to the court on a certain day in term, should be served on all parties interested in the land (who had not joined in the petition), and on the guardians of such as were minors. This method of proceeding had been in practice in this State ever since the statute of 1808—1 Terr. Laws, 204. No such copy of the petition and notice had been served upon these minor defendants, nor upon any guardian of theirs, natural or appointed.

It is now contended that the court had authority to appoint a guardian *ad litem* merely upon the prayer of this petition, without any notice or summons whatever served upon them or their guardian; that such an appointment gave the court jurisdiction over these minor parties; that the

guardian so appointed had authority to bind them, and that a judgment so rendered is conclusive of their rights and title to this property. For this position the defendant relies upon the 54th section of the statute (R. C. 1845, p. 774), and it is insisted (and argued as if it were *res adjudicata* in this case) that the decision in Shaw v. Gregoire, 35 Mo. 342, recognizing the case of Hite v. Thompson, 18 Mo. 461, as a precedent, has settled the question. This proposition has struck us as so contrary to all principles of law or practice that we are acquainted with, and as so repugnant to all proper notions of justice and right, that we have taken some pains to find where the law could be so written or laid down.

The mode of instituting suit in partition which was provided by the act of 1845 (§ 5) and in previous acts, and which has been continued in nearly the same terms to the present time, evidently contemplated that a copy of the petition with the notice of a day in term on which the petition would be presented to the court should be served four weeks previous to such term on all parties defendant who were interested in the lands, or upon the guardians of such as were minors and had guardians residing in this State; and by the seventh section, upon parties non-resident, there might be notice by order of publication, or by personal service of a copy of the petition and notice. No countenance is anywhere given to the idea that any person, minors or others could be made a party to such a proceeding without notice or service of any kind, and without any appearance in person or by an authorized representative. It seems to be supposed that the 54th section of the act gave the court power to appoint a guardian *ad litem* for minor defendants whether they or their guardians had been served with notice or not, and particular stress is laid upon the words "*before or after any proceeding by virtue thereof.*" This section plainly refers to any proceeding by the court, and it must be construed and understood with reference to the preceding sections. The 5th section contemplates that the copy of the petition and the notice will be served on all

parties before the case is presented to the court at all; and this 54th section, while providing that the court shall take no steps against a minor defendant until a guardian has been properly appointed, and making it lawful for the court to appoint a guardian for him, pre-supposes that the minor defendant has been brought before the court according to law for that purpose. But until he is brought into court by a service of the petition and a notice upon him or his guardian, or until he appears in person, or by his lawful guardian on whom such service has been had, or who has authority by law to represent him in such matters without notice, there is not the least warrant, either in the statute, or in common law, or in equity, for any authority in the court to appoint a guardian for him, or to do any judicial act in the premises affecting his rights and estate. At law a guardian for a minor defendant could have been appointed only after the service of process upon him—R. C. 1845, p. 807, § 8; Acts of 1849, p. 77, § 2. It was the same in equity—Hendricks v. McLean, 18 Mo. 37; 1 Dan. Ch. Prac. 229; Day v. Kerr, 7 Mo. 426; Prac. in Ch. of 1845, p. 1837, art. 1.

That a judgment rendered against a party who has never been brought before the court by any manner of notice, and never appeared or become a party to the record, is utterly void as to him, there is no need of citing authorities.

The decision in Shaw v. Gregoire, 35 Mo. 342, was based upon the supposition that the facts of the case were similar to those in Hite v. Thompson, and supposed that the court had obtained jurisdiction of the persons of these minor defendants as in that case, where it was held, under the same statutes, that the parties in question there were properly before the court. The precise point here presented does not appear to have been considered in that decision. In the opinion of Dryden, J., overruling the motion for a new hearing, it appears that this record of the former partition was not then before the court, and it was said, "what the record may show we cannot tell."

In Hite v. Thompson, 18 Mo. 461, the case was very dif-

ferent from that which is now presented here. The plaintiff in the partition suit was the legally appointed guardian of the two minors, his wards, who were made defendants as tenants in common with him. Being himself the party plaintiff, he appeared in court in his capacity of guardian, and on his motion the court appointed a guardian *ad litem* for them. The court considered him as having authority as the general guardian to act for them in the matter of the partition under the 53d section of the act, in a case where service of notice upon the guardian of a minor was all that the statute required. He was before the court acting as guardian for them as well as individually for himself; and the point decided was, that he could appear as their representative in his capacity of general guardian, without the service of notice either upon them or upon himself. The language of the opinion must be understood with reference to the question which was under consideration. We cannot take it as any authority for the position that the court would be authorized to appoint a guardian for a minor defendant who had neither been served with notice of any kind, nor was represented before the court by any lawfully appointed guardian whatever.

We must consider ourselves at liberty, therefore, to determine the matter as an open and undecided question. Upon consideration we cannot doubt that the foregoing view gives the proper construction to these statutes. It might even be questionable whether a statute which should expressly authorize a court to proceed against a person who had in no manner become a party to the record, and bind his estate by a judgment rendered in his absence and without his knowledge, and especially that of a minor, without notice to him, and without the knowledge of his adult friends, or his general guardian, natural or appointed, would not be unconstitutional and void as an invasion of the obligation of contracts and vested rights of property. It would be nearly equivalent to taking the property of one person and giving it to another by the mere force of a statute enactment, and scarcely less

than confiscation.   Such a construction will not be given to
an act of the Legislature unless it in clear and express terms
admit of no other rational explanation.   There is no lan-
guage here that requires such an interpretation.   It would
do violence to the words, the reason, and the manifest inten-
tion of the act, and would be in contravention of the general
principles of law.   We must hold therefore that this parti-
tion, as far as it affected these minor defendants, or their
estate in this land, was a nullity.

These conclusions dispose of all the material points.   The
judgment is substantially correct and will be affirmed.   Judge
Wagner concurs ; Judge Fagg absent.